NORTHERN DISTRICT OF TEXAS
FILED

JUL 1 6 2010

CLERK, U.S. DISTRICT COURT
By _____
Deputy

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| vs. | § | Case No. 4:10-CR-122-A |
| | § | |
| BRITTANY KRAMBECK (01) | § | |

## F A C T U A L   R E S U M E

**INFORMATION:**

Count One:   Maintaining Drug Involved Premises
21 U.S.C. § 856(a)(1)

Count Two:   Structuring Transactions to Evade Reporting Requirements
31 U.S.C. §5324(a)

**PENALTY:**

Count One: The greater of a fine not to exceed $500,000 or twice the pecuniary gain to the defendant or loss to the victims, Twenty (20) years imprisonment, or both; plus a Mandatory Special Assessment of $100; plus a term of supervised release of not more than three years; restitution to victims or to the community, which may be mandatory under the law, and which the Defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone; costs of incarceration and supervision; denial of certain federal benefits (as defined in 21 U.S.C. §862(d) for a period of five (5) years; permanent ineligibility for assistance under any state program funded under part A of Title IV of the Social Security Act; and permanent ineligibility for benefits under the food stamp program or any state program carried out under the Food Stamp Act of 1977.

Count Two: A fine not to exceed the greater of $250,000 or twice the pecuniary gain to the defendant or loss to the victims, Five (5) years imprisonment, or both; plus a Mandatory Special Assessment of $100; plus a term of supervised release of not more than three years; restitution to victims or to the community, which may be mandatory under the law, and which the Defendant agrees may include restitution arising from

all relevant conduct, not limited to that arising from the offense of conviction alone; costs of incarceration and supervision

**MAXIMUM PENALTY:**

A fine not to exceed the greater of $750,000 or twice the pecuniary gain to the defendant or loss to the victims, Twenty-five (25) years imprisonment, or both; plus a Mandatory Special Assessment of $200; plus a term of supervised release of not more than three years; restitution to victims or to the community, which may be mandatory under the law, and which the Defendant agrees may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone; costs of incarceration and supervision; denial of certain federal benefits (as defined in 21 U.S.C. §862(d) for a period of five (5) years; permanent ineligibility for assistance under any state program funded under part A of Title IV of the Social Security Act; and permanent ineligibility for benefits under the food stamp program or any state program carried out under the Food Stamp Act of 1977.

**ELEMENTS OF THE OFFENSES:**

In order to establish the guilt of the defendant of the offense of Maintaining Drug Involved Premises as alleged in Count One of the Information, the Government must prove each of the following elements beyond a reasonable doubt:

1. That on or about the dates charged, the defendant, opened, maintained or used the premises specified in the Information; and

2. Knowingly did so for the purpose of either using or distributing a controlled substance.

In order to establish the guilt of the defendant of the offense of Structuring Transactions to Evade Reporting Requirements as alleged in Count Two of the Information, the government must prove each of the following elements beyond a reasonable doubt:

1. That the defendant knowingly structured, attempted to structure, or assisted in structuring a currency transaction;

2. That the defendant knew of the domestic financial institution's legal obligation to report transactions in excess of $10,000; and

3. That the purpose of the structured transaction was to evade that reporting obligation.

**STIPULATED FACTS:**

1. **Brittany Anne Krambeck** is the daughter of Thomas L. Gerry. **Krambeck** was raised by her aunt and uncle because **Gerry** was incarcerated in the Texas Department of Criminal Justice Institutional Division from 1990 to 2005. After Gerry was released on parole, **Krambeck** re-established her relationship with her father. By 2008, **Krambeck** had become a distributor of methamphetamine for Gerry and a trusted member of the Gerry's drug trafficking organization (DTO).

2. In January 2009, **Krambeck** and her paramour - Wade Phillip Smith - moved to a residence located at 5516 Emerald Court, North Richland Hills, Texas. From that residence both Smith and **Krambeck** engaged in the sale and distribution of methamphetamine which they obtained from Gerry. From at least February 2009 through August 20, 2009 Smith and **Krambeck** maintained and used the Emerald Court residence as a place for the distribution of methamphetamine.

3. On or about June 10, 2009, Juan Gloria Cruz and Rene Gloria Cruz distributed approximately 2 kilograms of methamphetamine to Thomas L. Gerry at the joint residence of Smith and **Krambeck**. Gerry had been introduced to the Cruzes through Smith.

4. On or about July 15, 2008, Thomas L. Gerry caused to be filed with the Secretary of State of the state of Texas a Certificate of Formation for Hammer Time Custom Remodeling, LLC; [HTCR] which Certificate names Gerry as the sole managing member.

5. On or about October 7, 2008, Thomas L. Gerry opened an account at Wells Fargo Bank in the name of Hammer Time Custom Remodeling, LLC. The depository agreement shows that Thomas Gerry is the sole manager of HTCR and that Gerry and **Krambeck** are signators on the account.

6. In October 2008, Gerry desired to purchase a house located at 2022 Cherry Circle, Grand Prairie, Texas and do so in the name of HTCR. Gerry wanted to use the proceeds of his methamphetamine sales to purchase the property. **Krambeck** was recruited to help accomplish the purchase. Gerry and **Krambeck** put together a list of persons (who were either involved in the operations of the DTO, or otherwise trusted confederates or relatives) who would be given part of the drug profits and would then purchase cashier's checks and

deposit them into the HTCR accounts. **Krambeck** obtained the drug profits from Gerry and distributed them to various persons on the list instructing them to purchase cashier's checks in amounts under $10,000 and then to deposit the checks into the HTCR account. Both **Krambeck** and Gerry knew that financial institutions were required by law to report cash transactions in excess of $10,000 to the Treasury Department. The purpose of purchasing multiple cashier's checks of less than $10,000 was to evade that reporting requirement.

7.    **Krambeck** deposited $11,471 in currency into two of her accounts on October 23, 2008. That same day $11,848.30 was deposited into the HTCR account. That deposit consisted of three checks: one in the amount of $727.81 drawn on the account of Amanda Cox (another daughter of Thomas Gerry), and two checks drawn on the account of Charles Smith, the late father of Wade Phillip Smith, in the amouns of $7,908.77 and $3,211.72 , each of which were signed by Wade Phillip Smith. On the next day there were two deposits to the HTCR account totaling $23,939.77. Records from Wells Fargo Bank show the $23,939.77 deposit was comprised of a $9,370.00 Official Check #0675419517 from Wells Fargo dated October 24, 2008 purchased by Myoshia Nance (Gerry's girlfriend) and made payable to HTCR, a $9,740 Cashiers Check #2984506 from Bank of America purchased by Taliashe Authorlee (another Gerry girlfriend) and a $4,829.77 Compass Bank Cashier's Check purchased by Clifton Reynolds and made payable to HTCR. Records from Wells Fargo Bank show on October 27, 2008, there was a $14,210.00 deposit into the HTCR account. The deposit was comprised of a cash deposit of $4,430.00 and two cashiers checks from First Convenience Bank #1214369 and 1214372 both purchased by Kimberly Krambeck - the sister of **Brittany Krambeck** - dated October 25, 2008 for $5000.00 and $4,780.00 respectively.

8.    On October 27, 2008 - the day that HTCR closed on the purchase of the residence at 2022 Cherry Circle, Grand Prairie, Texas. In connection with the purchase of that residence the title company closing papers show that HTCR delivered a Cashier's Check in the amount of $69,361.70 from Wells Fargo Bank to the title company. Wells Fargo records show that on October 27, 2008, **Thomas Gerry**, on behalf of HTCR made a withdrawal of $69,361.70 to purchase the cashier's check. **Krambeck** executed all of the documents for HTCR at the closing.

9.    The majority of the funds ($36,000) used to purchase the cashier's check came into the account of HTCR by transfer from the account of Pear Tree Acquisitions, LLC at Wells Fargo Bank, N.A.[Wells Fargo]. The President of Pear Tree Acquisitions, LLC is Brian Perryman, who is Gerry's nephew and who also obtained methamphetamine from Gerry to sell to others. A Currency Transaction Report filed by Wells Fargo reflects that on October 27, 2009, **Brian Perryman** (who was identified by his Texas Driver's License # XXXXX51)

deposited $35,000 in currency into an account of Pear Tree Acquisitions, LLC. Later that same day, **Perryman** had $36,000 transferred from the Pear Tree Acquisitions, LLC account into the HTCR account.

---

BRITTANY KRAMBECK
Defendant
Date Signed: 6-18-10

---

Leigh Davis
Attorney for BRITTANY KRAMBECK
Date Signed: 6-18-10

Factual Resume
United States of America vs. BRITTANY KRAMBECK

Page 5 of 5